

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0225-11

**CECIL EDWARD ALFORD, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

**ALCALA, J., delivered the opinion of a unanimous Court.**

### O P I N I O N

Appellant, Cecil Edward Alford, challenges the court of appeals's holding that the

trial court properly admitted appellant's un-*Mirandized*[1] custodial statements made in

response to "questioning attendant to an administrative 'booking' procedure." *Alford v. State*,

333 S.W.3d 358, 361 (Tex. App.—Fort Worth, 2010) (mem. op.).  We granted appellant's

petition for discretionary review to address his contentions that the court of appeals erred (1)

---

[1]     *Miranda v. Arizona*, 384 U.S. 436 (1966).

by applying an abuse-of-discretion standard in reviewing the trial court's ruling that the questioning did not offend Texas Code of Criminal Procedure arts. 38.22, § 3(a)(2)[2] and 38.23(a);[3] and (2) by affirming the trial court's admission of the statements under the "booking question exception" to *Miranda* because "the officer's questions—unlike routine booking questions—were reasonably likely to elicit incriminating responses." We conclude that an appellate court must generally review *de novo* whether a question comes within the booking-question exception to *Miranda*, and that the court of appeals did not err by affirming the trial court's admission of appellant's statements under that exception. We affirm.

## I. Background

### A. Facts

At the beginning of his shift on January 29, 2009, Officer Ramirez of the Fort Worth Police Department inspected his patrol car and found no contraband in it. That evening, he was dispatched to investigate a report of a person with a weapon.[4] When he arrived at the

---

[2]  Art. 38.22 § 3(a)(2) provides, in relevant part, "No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless . . . prior to the statement," the accused is given the warning in art. 38.22 § 2(a), which includes that (1) the accused has the right to remain silent; (2) any statement he makes may be used against him; (3) he has the right to a lawyer; (4) he has the right to an appointed lawyer if he cannot employ one; and (5) he has a right to terminate the interview at any time. *See* TEX. CODE CRIM. PROC. art. 38.22 §§ 2(a) & 3(a)(2).

[3]  Art. 38.23(a) provides, "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX. CODE CRIM. PROC. art. 38.23(a).

[4]  He confirmed that no one else had been in the patrol car since he had inspected it.

location, he observed appellant getting out of a car with an open beer in his hand. He approached appellant and advised him that it was illegal to have an open container in public near a school. He asked appellant "some basic questions," including whether "he had any narcotics or anything on him," which appellant denied. When he asked appellant specifically about drugs and weapons, appellant became nervous and "started backing up a little bit." He advised appellant that he was being detained and was not free to leave, but appellant "took a couple of steps back" and then began running. A chase ensued. With the assistance of his partner, Officer Caffey, Officer Ramirez was able to detain appellant. He arrested appellant for evading arrest or detention. *See* TEX. PEN. CODE § 38.04.

While transporting appellant to jail, Officer Caffey noticed that appellant "was laying over on the seat kind of squirming around." When he asked appellant what he was doing, appellant responded that "his side was hurting," but he refused medical attention. Upon arrival, the officers escorted appellant out of the back seat and then, pursuant to department procedure, searched the back seat. From underneath the back seat, they recovered a clear plastic bag with pills inside and, directly under the bag, a computer flash drive, which is also referred to as a "thumb" drive. Once they had collected those items, the officers escorted appellant to the booking area where arresting officers routinely complete required paperwork and facility personnel conduct a pre-incarceration search.

According to Officer Ramirez, as facility personnel searched appellant during the booking process, "I took the thumb drive that was located in the back seat and held it up and

I asked him what it was." Appellant responded, "It's a memory drive," and Officer Ramirez followed up with, 'Is it yours?'" Appellant confirmed that it belonged to him, and Officer Ramirez placed it with appellant's other personal property.[5] Appellant had not yet been advised of his rights under *Miranda* or Texas Code of Criminal Procedure article 38.22 § 2(a). *See* TEX. CODE CRIM. PROC. art. 38.22.

Officer Ramirez requested "criminal analysis" of the unknown substance found in the patrol car. Testing revealed that the substance was over four grams of methylenedioxymethamphetamine, commonly known as "MDMA" or "ecstasy." Appellant was charged by indictment of possession of a controlled substance of four grams but less than 400 grams. *See* TEX. HEALTH & SAFETY CODE § 481.116(d).

### B. Pretrial Motion to Suppress Evidence

Appellant filed a pretrial motion to suppress his responses to Officer Ramirez's questions regarding the flash drive. At the pretrial hearing on the motion, he argued that Officer Ramirez's questioning constituted custodial interrogation and that, because no warnings had been issued, appellant's responses were inadmissible under Texas Code of Criminal Procedure articles 38.22 and 38.23. *See* TEX. CODE CRIM. PROC. arts. 38.22 & 38.23. The State responded that the questioning comprised only "questions that are generally asked at book-in" in order to properly manage personal property and were not interrogation.

---

[5] The booking search also revealed $317 on appellant's person, which was collected as evidence.

Cecil Alford - 4

Officer Ramirez testified that his department has a "standard procedure" in handling individuals' personal property and that department members must "follow procedures as far as finding out what property belongs to the individual so it can be tied with their personal property." He explained that with "[w]allets, watches, any type of personal property," they must confirm that it belongs to a suspect by asking, "'Is this your property?' That way we can put that into their personal property. We don't want to put something that's not theirs into property." If it does belong to a suspect, "then it goes into the personal property to the Mansfield [facility] law enforcement personnel," who are contracted by the Fort Worth Police Department to handle "book-in, handling, and holding" of inmates.

Officer Ramirez testified that, upon arriving at the jail, he asked appellant "questions in reference to the thumb drive" in order "to establish if it was his property." After confirming that the item did belong to appellant, he gave it to facility personnel, who then "placed it in [appellant's] personal property." He confirmed that the thumb drive was not collected as evidence and that he never saw it again.

The trial court denied the motion and admitted appellant's statements. Although the trial judge did not enter written findings of fact and conclusions of law, he did make oral findings and conclusions on the record.[6] In rendering his ruling, he observed that certain

[6] Although art. 38.22 § 6 requires that the trial court enter written findings of fact and conclusions of law, we have held that a trial court satisfies that requirement if it "dictates its findings and conclusions to the court reporter, and they are transcribed and made a part of the statement of facts, filed with the district clerk and made a part of the appellate record." *Murphy v. State*, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003); *see also Parr v. State*, 658 S.W.2d 620, 623 (Tex. Crim. App. 1983). The findings "need not be made with minute specificity as to every alleged and

law-enforcement procedures serve "a housekeeping function in which questions and answers are necessary in order to routinely process the prisoner." He determined that Officer Ramirez's subjective intent in asking the questions was the "best evidence" of whether the questioning constituted interrogation, noting that "when [appellant said], 'It's mine,' [Officer Ramirez] didn't say, 'Oh, well, never mind,' this is no longer personal property. This is going to the crime lab for fingerprints. . . . This is going to the computer lab to be analyzed." He emphasized that the drive was placed in appellant's property "never to be seen again."

He concluded,

> For purposes of 38.22 I find as a matter of fact and law, he was in custody. I'm simply finding it was [sic][7] a custodial interrogation. It was normal processing. Based on the totality of the book-in, I find it's not normal interrogation. . . . it was two quick questions that resulted in someone's personal property being placed in the personal property bag. And, therefore, those two statements, within a very narrow context, are admissible and do not violate 38.22. If they don't violate 38.22, then as a matter of law, they can't violate 38.23.

---

hypothetical possibility for physical or mental coercion, but need only be sufficient to provide the appellate court and the parties with a basis upon which to review the trial court's application of the law to the facts." *Nichols v. State*, 810 S.W.2d 829, 831 (Tex. App.—Dallas 1991, pet. ref'd). In this case, the findings contained in the record are sufficient to enable the parties to fully address, and the appellate courts to review, the trial court's ruling and, therefore, satisfy art. 38.22. *See Alford*, 333 S.W.3d at 360 (noting that the trial court found that the exchange involved "'two quick questions that resulted in someone's personal property being placed in the personal property bag.'").

[7]    It is readily apparent from the context of all of the trial judge's statements that he intended to say that although appellant was in custody at the time of questioning, the trial judge was finding that the questioning was not custodial interrogation.

At trial, the State introduced the statements to help establish appellant's knowledge and possession of the controlled substance. The jury ultimately convicted appellant, and he was sentenced to five years' confinement.

On direct appeal, appellant contended, in a single issue, that the trial court erred in admitting his oral statement "which was not preceded by any rights advisements or a waiver of rights." *Alford*, 333 S.W.3d at 360. He argued that "Officer Ramirez's questions were designed to elicit incriminating information" and that they "constituted custodial interrogation." *Id*. at 360-61. The court of appeals noted that "questioning attendant to an administrative 'booking' procedure does not generally require *Miranda* warnings." *Id*. at 361. It concluded that, given the facts of the case, "the information adduced by Officer Ramirez was produced from administrative questioning" and held that "the trial court did not abuse its discretion by concluding that Alford's statements were made during normal processing." *Id*. We granted review to determine whether the trial court erred in admitting the statements under the booking-question exception to *Miranda*.

## II. Applicable Law

### A. General Standard of Review

In reviewing a trial court's ruling on a *Miranda*-violation claim, an appellate court conducts a bifurcated review: it affords almost total deference the trial judge's rulings on questions of historical fact and on application of law to fact questions that turn upon credibility and demeanor, and it reviews *de novo* the trial court's rulings on application of

law to fact questions that do not turn upon credibility and demeanor. *Ripkowski v. State*, 61 S.W.3d 378, 381-82 (Tex. Crim. App. 2001) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). The decision as to whether custodial questioning constitutes "interrogation" under *Miranda* is a mixed question of law and fact, and we defer to the trial court's fact findings that turn on an evaluation of credibility and demeanor. *See id*. If credibility and demeanor are not necessary to the resolution of an issue, whether a set of historical facts constitutes custodial interrogation under the Fifth Amendment is subject to *de novo* review because that is an issue of law: it requires application of legal principles to a specific set of facts. *See id.*; *see also Riley v. United States*, 923 A.2d 868, 883-84 (D.C. Cir. 2007), *cert. denied*, 555 U.S. 830 (2008) ("[W]e review *de novo* whether the defendant's rights were 'scrupulously honored' and whether the police conduct constituted 'interrogation' because these are questions of law."). The parties dispute what standard of review applies to the appellate review of the booking-question exception to *Miranda*, and we decide that matter later in this opinion.

**B.    Custodial Interrogation and the Booking-Question Exception to *Miranda***

In *Miranda v. Arizona*, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the

privilege against self-incrimination." 384 U.S. 436, 444 (1966).[8] This is because "the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk that an individual will not be accorded his privilege under the Fifth Amendment not to be compelled to incriminate himself." *Id*. at 439.

The Court later elaborated upon the meaning of "interrogation" under *Miranda* in *Rhode Island v. Innis*, explaining that the term refers to (1) express questioning and (2) "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." 446 U.S. 291, 301 (1980). The *Innis* test "focuses primarily upon the perceptions of the suspect, rather than the intent of the police" in determining whether the suspect was coerced to provide incriminating information while in custody. *Id*.; *Illinois v. Perkins*, 496 U.S. 292, 296 (1990). But "any knowledge the police may have had concerning the unusual susceptibility of a defendant to a particular form of persuasion" may be relevant in determining what the police knew or should have known in asking a question. *Innis*, 446 U.S. at 302 n.8.[9]

---

[8]    On appeal, appellant alleges violations of arts. 38.22, § 2(a) and 38.23(a), arguing that the officer's questioning constituted "custodial interrogation" under § 2(a), as defined by *Miranda*. Appellant's arguments, however, do not distinguish between the requirements in the Texas Code of Criminal Procedure and *Miranda* and focus solely on judicial interpretation of "custodial interrogation" as used in *Miranda*. We limit our analysis accordingly. *See Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007) ("The warnings provided in Section 2(a) are virtually identical to the *Miranda* warnings" and "are required only when there is custodial interrogation" as construed in *Miranda*.).

[9]    We refer to the *Innis* test as the "should-have-known test."

The Court has since identified certain types of questions that are "normally attendant to arrest and custody" that are not, therefore, subject to the should-have-known test. *See*, *e.g.*, *South Dakota v. Neville*, 459 U.S. 553, 564 n.15 (1983). It has held, for example, that in the context of a DWI arrest, "a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda*" because such a question, the Court concluded, is "normally attendant to arrest and custody." *Id*.[10]

A four-justice plurality has also explicitly recognized, as a type of question "normally attendant to arrest and custody," a "routine booking question exception" to *Miranda* that "exempts from [*Miranda*]'s coverage questions to secure the biographical data necessary to complete booking or pretrial services."[11] *Pennsylvania v. Muniz*, 496 U.S. 582, 600-02 (1990) (Brennan, J., plurality op.) (internal quotation marks omitted). It explained that questions that are asked "for record-keeping purposes only" and are "reasonably related to the police's administrative concerns . . . fall outside the protections" of *Miranda*. *Id*. at 601-02. Routine booking questions are, by definition, questions normally attendant to arrest and

---

[10] *See also Jones v. State*, 795 S.W.2d 171, 172 (Tex. Crim. App. 1990) ("[W]e hold the police questioning incident to the videotaped sobriety test was 'activity normally attendant to arrest and custody' of a DWI suspect, not 'interrogation.'"); *McGinty v. State*, 723 S.W.2d 719, 722 (Tex. Crim. App. 1986) (holding that refusal to submit to breathalyzer test did not result from custodial interrogation).

[11] Four justices concurred on other grounds (concluding that the responses at issue were nontestimonial) without explicitly addressing the existence of a booking exception. *See id*. at 608 (Rehnquist, C.J., concurring) (deciding it was "unnecessary to determine whether the questions fall within the 'routine booking question' exception to *Miranda* Justice Brennan recognizes"). Justice Marshall concurred and dissented. *Id*. at 608 (Marshall, J., concurring and dissenting).

custody and "do not, by their very nature, involve the psychological intimidation that *Miranda* is designed to prevent. At the same time, they serve a legitimate administrative need." *United States v. Doe*, 878 F.2d 1546, 1551 (1st Cir. 1989) (internal citations omitted). State and federal courts have uniformly recognized the *Muniz* plurality opinion as establishing such an exception, including this Court. *See Cross v. State*, 144 S.W.3d 521, 525 n.5 (Tex. Crim. App. 2004).[12]

### 1. Questions reasonably related to administrative concerns

The *Muniz* plurality held that questioning Muniz about his "name, address, height, weight, eye color, date of birth, and current age" was *Miranda* exempt because these questions were "reasonably related to the police's administrative concerns." *Muniz*, 496 U.S. at 601-02. However, the Court has provided no definitive guidance on the scope of the exception. State and federal courts, including Texas's intermediate courts, have since undertaken to identify what routine custodial questions are reasonably related to a legitimate administrative concern so to potentially fall within the exception's parameters. *See Townsend v. State*, 813 S.W.2d 181, 186 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) (holding that questions regarding suspect's name, address, weight, height, place of employment, or

---

[12]     *See also Presley v. City of Benbrook*, 4 F.3d 405, 408 n.2 (5th Cir. 1993) ("In the wake of *Muniz*, it has been universally accepted by courts, both federal and state, that a routine booking question exception to the Fifth Amendment exists."); *Thomas v. United States*, 731 A.2d 415, 421 (D.C. Cir. 1999) (collecting cases).

physical disabilities "normally attendant to arrest and custody").[13]  Conversely, courts have held that questions that do not reasonably relate to a legitimate administrative concern are not "booking questions" within the exception. *See Branch v. State*, 932 S.W.2d 577, 581 (Tex. App.—Tyler 1995, no pet.) (asking defendant "where he had been going at the time he was pulled over, when and what he had last eaten, and whether he had drunk an alcoholic beverage . . . went beyond the scope of that normally attending arrest and custody and amounted to custodial interrogation").[14]

### 2. Booking questions "designed to elicit incriminatory admissions" not *Miranda*-exempt

A primary dispute between the parties concerns a footnote at the end of the plurality opinion in *Muniz*, in which Justice Brennan stated that

> recognizing a "booking exception" to [*Miranda*] does not mean, of course, that any question asked during the booking process falls within that exception.

---

[13]      *See also United States v. D'Anjou*, 16 F.3d 604, 609 (4th Cir. 1994) (questions regarding suspect's nationality and address); *United States v. Dougall,* 919 F.2d 932, 935 (5th Cir. 1990) (name, social security number, birth date, birth place, height, weight, and address); *United States v. Washington*, 462 F.3d 1124, 1133 (9th Cir. 2006) (gang moniker and gang affiliation); *United States v. Snow*, 82 F.3d 935, 943 (10th Cir. 1996) (fingerprinting and signing the fingerprint card).

[14]      *See also Sims v. State*, 735 S.W.2d 913, 918 (Tex. App.—Dallas 1987, pet. ref'd) (questions as to what and when appellant last ate and asking appellant to state the date, day, and time were interrogation); *United States v. Downing,* 665 F.2d 404, 405 (1st Cir. 1981) (inquiring about purpose of keys retrieved from appellant's pocket and location of airplane that directly led to discovery of incriminating evidence); *United States v. Mata-Abundiz*, 717 F.2d 1277, 1280 (9th Cir. 1983) (inquiring into defendant's citizenship ten days after initial arrest and after "a true booking had already occurred" and done by officer from agency that did "not ordinarily book suspects" alien); *United States v. Guess*, 756 F. Supp. 2d 730, 742 (E.D. Va. 2010) (asking whether defendant owned a vehicle not a booking question because not necessary to "fill out appropriate booking paperwork or comply with required booking procedures"); *Hughes v. State*, 695 A.2d 132, 141 (Md. 1997) (questions as to appellant's "narcotics or drug use" not administrative).

> Without obtaining a waiver of the suspect's [*Miranda*] rights, the police may not ask questions, even during booking, that are designed to elicit incriminatory admissions.

*Muniz*, 496 U.S. at 602, n.14 (Brennan, J., plurality op.) (internal quotations and citations omitted). The meaning of this footnote and how courts are to apply it has been the subject of debate among courts throughout the country. *See* Meghan S. Skelton & James G. Connell, III, *The Routine Booking Question Exception to* Miranda, 34 U. Balt. L. Rev. 55, 78-94 (2004) (examining varying judicial interpretation of booking-question exception post-*Muniz*).

Appellant proposes that we apply the should-have-known test in deciding the admissibility of booking questions. He contends that the footnote implies that, even though a question may reasonably relate to an administrative concern and is, therefore, technically a "booking question," the evidence is inadmissible "when an officer should know that his question is reasonably likely to elicit an incriminating response from the suspect." He argues that a booking-question exception that is unlimited by an objective should-have-known standard is inconsistent with cases from Texas courts of appeals and federal courts that have subjected booking questions to the should-have-known test and "encourages law enforcement officers to violate the rights of accused persons by simply recasting incriminating questions as 'booking questions.'" In his view, an objective should-have-known test must also apply

because consideration of an officer's subjective intent and good faith is inconsistent with the Supreme Court's rejection of subjective inquiries in other areas of criminal law.[15]

The State counters that appellant's interpretation "reduces the booking exception to a nullity" and would unduly burden booking officers, who require a clear rule to enable efficient and consistent processing of arrestees.[16] Instead, it proposes its own objective test based on its interpretation of the plurality's "designed to elicit" language: A reviewing court must objectively "examine the questions as an abstract matter to determine whether it belongs in the universe of booking questions." It concludes that booking questions are "always proper" and, therefore, whether the exception applies "is an abstract issue that is unrelated to the facts of the arrest." Under this standard, what an officer knew or should have known in a particular case is wholly irrelevant. Alternatively, it argues that "the only way to preserve something of the booking exception is to employ a subjective review of the officer's motivation."

### a. Case law supports both parties' positions

#### i. Texas case law

---

[15] Appellant cites several areas of law requiring objective judicial inquiry, including search-and-seizure law, *Brady* analysis, and the public-safety exception to *Miranda*. *See Michigan v. Bryant*, 131 S.Ct. 1143, 1156 n.7 (2011) (discussing Court's rejection of subjective inquiries in other criminal-law contexts).

[16] The State cites Supreme Court precedent describing the need for clarity of constitutional rules and ease of application. *See, e.g., Minnick v. Mississippi*, 498 U.S. 146, 151 (1990); *Davis v. United States*, 512 U.S. 452, 460-62 (1994).

The State accurately observes that "booking exception cases around the country are confusing and conflicting." Texas case law is no exception. Although this Court has acknowledged the existence of a booking-question exception, we have not yet provided specific guidance on the subject, particularly post-*Muniz*. In *Cross v. State*, we stated, in a footnote, "Questions normally attendant to arrest, custody, or administrative 'booking' procedure do not constitute 'interrogation' for purposes of *Miranda*," without further elaboration. 144 S.W.3d at 525 n.5.

We also briefly discussed the issue in *Ramirez v. State*, in which we determined that questions asked during the booking process regarding the appellant's gang affiliation were reasonably related to an administrative concern for facility-personnel and inmate safety, but we did not address the issue of whether the question was likely to elicit an incriminating response. *Ramirez v. State*, No. AP-75,167, 2007 Tex. Crim. App. Unpub. LEXIS 610 (Tex. Crim. App. Dec. 12, 2007) (not designated for publication), *cert denied*, *Navarro-Ramirez v. Texas*, 555 U.S. 831, *46 (U.S. 2008).[17] This appears to be the only case in which this Court has directly analyzed and applied the booking-question exception, but, as an

---

[17] In that case, the appellant complained that booking questions as to his gang affiliation were interrogation under *Miranda*. *Ramirez*, No. AP-75,167, 2007 Tex. Crim. App. Unpub. LEXIS 610, at *43. The booking officer testified that "he routinely asks prisoners about their gang affiliation '[s]o that we won't put them with a rival gang if they are gang-related' because 'a fight would happen' and '[s]omebody would get hurt.'" *Id.* at *46. We concluded that the question "was one normally attendant to the administrative booking procedure and was necessary to secure the safety of inmates and employees at the county jail." *Id.* Citing *Cross* and *Muniz*, we held that, because the inquiry was "a routine booking question as opposed to a custodial interrogation," *Miranda* warnings were not required. *Id.* at *45-46.

unpublished opinion, it has no precedential value. *Id*.; *see also* TEX. R. APP. P. 77.3 ("Unpublished opinions have no precedential value and must not be cited as authority by counsel or by a court."). Furthermore, *Ramirez* does not address the *Muniz*-plurality "design" language nor does it explain the standard of review applicable in determining whether a question properly fits within the exception. *Id*. at *43-47.

Texas courts of appeals have varied widely in their interpretation and application of the exception. At least one intermediate court has, like *Ramirez*, affirmed the trial court's admission of an appellant's statements during the booking process regarding his gang affiliation. *Pierce v. State*, 234 S.W.3d 265, 272 (Tex. App.—Waco 2007, pet. ref'd). However, that court implied that its holding was conditioned on "the absence of evidence that the offense for which Pierce was in custody was gang-related," suggesting that the inquiry is not purely abstract and unrelated to the facts of the offense. *Id*. Yet other intermediate courts have exempted from *Miranda* booking questions that were related to the offense for which an appellant was in custody, suggesting that an appellate court merely determines whether a question reasonably relates to a legitimate administrative concern without consideration of the facts.[18] Still others have implicitly subjected a booking question

---

[18]     *See Smith v. State*, No. 01-09-00263-CR, 2010 Tex. App. LEXIS 8182, *10 (Tex. App.—Houston [1st Dist.] Oct. 7, 2010, no pet.) (mem. op., not designated for publication) (asking suspect whether he owned car that officer knew had been used in robbery was *Miranda* exempt because "attendant to an administrative 'booking' procedure).

to the should-have-known test in deciding the admissibility of booking statements.[19]  And another has considered only whether the officer actually intended to elicit an incriminating response.[20]  As a result, both appellant's and the State's assertions find support in our State's jurisprudence.[21]

### ii. Case law from other jurisdictions

The conflict within Texas's booking-exception case law also exists within other states' and federal case law on the subject.  Many courts have held, as appellant advocates, that routine administrative questions are not *Miranda* exempt if questioning officers should have known that the question was likely to yield incriminating information.[22]  Several of

---

[19]    *See Salazar v. State*, No. 03-08-00164-CR, 2009 Tex. App. LEXIS 8316, *6-7 (Tex. App.—Austin Oct. 29, 2009, pet. ref'd) (mem. op., not designated for publication) (noting that questions that "police should know are reasonably likely to elicit an incriminating response" constitute interrogation and holding that officer's administrative question admissible because it "could not be considered reasonably likely to elicit an incriminating response.").

[20]    *See Dickson v. State*, No. 05-03-01284-CR, 2005 Tex. App. LEXIS 4151, *14-15 (Tex. App.—Dallas May 27, 2005, no pet.) (mem. op., not designated for publication) (while executing search warrant on residence, officer asked appellant his "real name" and confirmed that his address was the residence being searched; affirmed because question was one "normally attendant to arrest and custody and was not intended to elicit an incriminating response.").

[21]    Although the above-cited unpublished cases have no precedential value, we cite them, not as authority, but merely to demonstrate the conflict among the intermediate courts. *See* TEX. R. APP. P. 77.3; *see also Mays v. State*, 318 S.W.3d 368, 379 (Tex. Crim. App. 2010) (citing unpublished opinions, not as authority, but merely to demonstrate how this Court and other courts have interpreted and applied constitutional law).

[22]    *See, e.g.*, *United States v. Rodriguez*, 356 F.3d 254, 260  (2d Cir. 2004) (determining whether officers "knew or should have known that evidence for an eventual prosecution would emerge" from administrative questioning); *United States v. Pacheco-Lopez*, 531 F.3d 420, 423-24 (6th Cir. 2008) ("This 'booking exception' to *Miranda* requires the reviewing court to carefully scrutinize the facts, as [e]ven a relatively innocuous series of questions may, in light of the factual circumstance and the susceptibility of a particular suspect, be reasonably likely to elicit an

these courts have reached this conclusion—as appellant seems to have—by simply reading out any distinction between the *Muniz*-footnote "design" language and the *Innis* test, applying the latter to all custodial inquiries regardless of their potential administrative function. *See Hughes*, 695 A.2d at 139-40 (applying *Innis* test, but noting that some courts "have defined the routine booking question exception in the language of *Muniz*, but have then employed the *Innis*-based standard as if the two formulations were interchangeable").[23]

Still, myriad other courts have interpreted *Innis* and *Muniz*, either explicitly or implicitly, as creating an exception to *Miranda* requirements wholly independent of a should-have-known inquiry. In *United States v. Gaston*, for example, the accused was present when officers arrived at a house to execute a search warrant. 357 F.3d 77, 81 (D.C. Cir. 2004), *cert denied*, 541 U.S. 1091 (2004). Officers detained appellant, and as they commenced their

---

incriminating response.") (internal quotations omitted); *Mata-Abundiz*, 717 F.2d at 1280 ("If the [routine booking] questions are likely to elicit an incriminating response in a particular situation, the exception does not apply. . . . The test is objective. The subjective intent of the agent is relevant but not conclusive.").

[23]     *See also People v. Rodney*, 648 N.E.2d 471, 474 (N.Y. 1995) (exception inapplicable "if the questions, though facially appropriate, are likely to elicit incriminating admissions because of the circumstances of the particular case," but citing *Muniz*-plurality footnote); *Thomas*, 731 A.2d at 423 n.12 (noting that "[t]he articulation of the relevant test in *Hughes* and *Rodney* [*supra*] differs somewhat from the *Muniz* plurality's 'designed to elicit incriminatory admissions,' but is consistent with the Supreme Court's observation in [*Innis*] that 'a practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation.'"); *United States v. Reyes*, 225 F.3d 71, 76-77 (1st Cir. 2000) ("Although phrased in terms of the officer's intention, the inquiry into whether the booking exception is thus inapplicable is actually an objective one: whether the questions and circumstances were such that the officer should reasonably have expected the question to elicit an incriminating response."); *United States v. Brown*, 101 F.3d 1272, 1274 (8th Cir. 1996) (citing *Muniz* footnote, but applying *Innis* test); *United States v. Minkowitz,* 889 F. Supp. 624, 627-28 (E.D.N.Y. 1995) (same).

search, an officer asked appellant for "his name, address, date of birth, and social security number" without *Mirandizing* him. *Id*. Appellant provided the address of the home being searched and indicated that he co-owned the house. *Id*. Holding the response admissible, the D.C. Circuit explained that

> officers asking routine booking questions "reasonably related to the police's administrative concerns" are not engaged in interrogation within *Miranda*'s meaning and therefore do not have to give *Miranda* warnings. Gaston's address and ownership interest in the house also related to "administrative concerns." The questions dealt as much with record-keeping as the similar booking questions asked in *Muniz*.

*Id*. (quoting *Muniz*, 496 U.S. at 601-02*)*. Therefore, despite that the questions were likely to elicit an incriminating response given the circumstances surrounding the questioning, their legitimate administrative function rendered them *Miranda* exempt. *See id*.[24]

By contrast, many courts have interpreted *Muniz*'s "designed to elicit" language as precluding only questions that were, in fact, intended to elicit incriminating information. *See United States v. Virgen-Moreno*, 265 F.3d 276, 293-94 (5th Cir. 2001) (observing that "questions designed to elicit incriminatory admissions are not covered under the routine

---

[24] *See also United States v. Gotchis*, 803 F.2d 74, 79 (2d Cir. 1986) ("since procurement of employment data would in most instances be as innocent and as useful for purposes of booking and arraignment as procurement of data about a suspect's marital status, we decline to create an exception forbidding routine questions about employment when the defendant is suspected of intent to distribute drugs."); *United States v. Blackwood*, 904 F.2d 78 (D.C. Cir. 1990) (not designated for publication), *cert. denied*, *Crossfield v. United States*, 498 U.S. 906 (U.S. 1990) (rejecting appellants' argument "that in the unique context of a 'crack house' arrest, otherwise routine questions concerning an arrestee's place of residence should not be excepted from *Miranda* because they are likely to elicit incriminating information" because the "questions were of a type ordinarily innocent of any investigative purpose").

booking question exception," holding that record "obviously" revealed that agents' otherwise routine booking questions were actually intended to elicit incriminating information), *cert denied*, 534 U.S. 1095 (2002).[25]  One federal court explained that judicial inquiry as to whether a question is "a disguised attempt at an investigatory interrogation" is "not meaningfully different" from the language "in footnote 14 in *Muniz*, which speaks of questions that are 'designed to elicit incriminating admissions.'" *Velasquez v. Lape*, 622 F. Supp. 2d 23, 24 (S.D.N.Y. 2008) (internal citations omitted).  Under this standard, a routine booking question is admissible subject only to a finding that the questioner actually possessed an interrogative intent.

### C. Exception Applies if Question Reasonably Relates to a Legitimate Administrative Concern Regardless of What Officer Should Have Known

After considering the diverse interpretations of the booking-question exception, we conclude that, in deciding the admissibility of a statement under the exception, a trial court must determine whether the question reasonably relates to a legitimate administrative

---

[25]  *See also United States v. Carmona,* 873 F.2d 569, 573 (2d Cir. 1989) (no error where questions not "intended . . . to elicit a confession or incriminating information. The police meant only to gather ordinary information for administrative purposes."); *Nicholas v. Goord*, 430 F.3d 652, 680 (2d Cir. 2005) (Lynch, J., concurring) ("questions aimed at eliciting identifying or 'pedigree' information [are] permitted without warnings, even though the answers to such questions may become evidence either of the particular crime for which the suspect was arrested, or of some past or future crime not yet under investigation."); *United States v. Broadus,* 7 F.3d 460, 464 (6th Cir. 1993) (routine booking questions are not interrogation "absent evidence that the police used the booking questions to elicit incriminating statements from the defendant") (internal quotations omitted); *Timbers v. Commonwealth*, 503 S.E.2d 233, 238 (Va. App. 1998) (booking exception inapplicable when officer's question was "designed to elicit" incriminating statements: officer "did not confront appellant in the holding cell to clarify an ambiguity in her statements made during booking; rather, he sought to investigate what he believed to be false information.").

concern, applying an objective standard. An appellate court reviews this determination *de novo*, as its resolution generally will not turn on an evaluation of credibility and demeanor. *See Guzman*, 955 S.W.2d at 89 ("[A]ppellate courts may review *de novo* 'mixed questions of law and fact'" if resolution of those questions does not turn "on an evaluation of credibility and demeanor.").[26] However, if a determination requires resolution of disputed facts, an appellate court must defer to the trial court's findings as to those facts if supported by the record and review *de novo* whether the question was, objectively, reasonably related to an administrative interest. *See id.*

### 1. Determining whether a question is, objectively, a booking question without imposing a should-have-known standard gives Supreme Court precedent effect and avoids an absurd result

We decline to adopt appellant's proposed application of the exception because, as the State observes, it renders the exception a nullity: It subjects all custodial questions, "booking" or otherwise, to the should-have-known test. Under appellant's application, therefore, no exception actually exists. What would be the purpose of asking whether a question is a "booking question" if, regardless of the answer, admissibility of the response ultimately turns on whether the question was reasonably likely to elicit an incriminating response? This is an absurd reading of *Muniz*, which cannot reasonably be interpreted as

---

[26]     *See also United States v. Gaston*, 357 F.3d 77, 87 (D.C. Cir. 2004) (Rogers, J., concurring) (noting that reviewing court "must scrutinize the administrative need for the questions, applying an objective standard").

intending to negate, in a single footnote in the analysis, the exception it had set forth in that same analysis.

Furthermore, appellant's interpretation disregards language in *Innis*, which expressly excluded from the definition of custodial interrogation questions that are "normally attendant to arrest and custody." *Innis*, 446 U.S. at 301. That language gave rise to the booking-question exception by indicating that routine administrative questions necessary for booking processing do not constitute interrogation, regardless of whether police should know that such questions are reasonably likely to elicit incriminating information.[27] *See id.*; *see also Velasquez v. Lape*, 622 F. Supp. 2d 23, 33 (S.D.N.Y. 2008) (declining to interpret that language in *Innis* as "meaningless surplusage" and rejecting defendant's argument that "the only logical interpretation of this [language] is that un-*Mirandized* routine pedigree questioning is permitted because, ordinarily, such questions are not reasonably likely to elicit an incriminating response.") (emphasis deleted).

---

[27]     Appellant does not assert that Officer Ramirez actually intended to elicit incriminating admissions in questioning appellant. We, therefore, do not reach the question as to whether there is any limitation to the booking exception when an officer's actual intent was to elicit incriminating admissions through questions characterized by the officer as booking questions. *See, e.g., United States v. Parra*, 2 F.3d 1058, 1068 (10th Cir. 1993) (officer did "not question Sotelo to obtain general booking information. Rather, he questioned Sotelo about his true name for the direct and admitted purpose of linking Sotelo to his incriminating immigration file."); *see also Corbin v. State*, 85 S.W.3d 272, 280 (Tex. Crim. App. 2002) (Cochran, J., concurring) (quoting WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 6.6(a), at 706 (3d ed. 1996) (noting that, with invocation of emergency doctrine, "it is essential that courts be alert to the possibility of subterfuge, that is a false claim of such a purpose where the true intent is to seek evidence of criminal conduct.")).

## 2.    Administrative efficiency and safety

In addition to being a more logical interpretation of the exception, we agree with the State that limiting judicial analysis to determining whether a question is, objectively, reasonably related to a legitimate administrative concern has the added benefit of affording law-enforcement personnel a sphere in which to quickly and consistently administer booking procedures without having to analyze each question to determine if it is likely to elicit an incriminating response. This standard will enable officers to obtain information that will help ensure the safety of facility personnel and other inmates, as well as the suspect. *See United States v. Reyes*, 225 F.3d 71, 77 (1st Cir. 2000) (observing that, although suspects "sometimes feel tempted to lie about even such basic" biographical information, courts cannot ask law-enforcement agents to "forego all routine procedures and detain an individual without knowing anything about him, not even what to call him in the jail log.").

## 3.  Applicable standard of review

We conclude that a trial court must examine whether, under the totality of the circumstances, a question is reasonably related to a legitimate administrative concern. An appellate court generally reviews *de novo* the objective reasonableness of a question's stated administrative purpose, but defers to the trial court's resolution of disputed facts. *See Guzman*, 955 S.W.2d at 89. If a question lacks a legitimate administrative purpose, the appellate court should apply the *Guzman* bifurcated standard of review to determine the

admissibility of the response under the general should-have-known test for custodial interrogation. *See id.*; *Ripkowski*, 61 S.W.3d at 381-82.

### III.    Analysis

Turning to the facts of this case, we must decide whether Officer Ramirez's question regarding ownership of the flash drive was, objectively, reasonably related to a legitimate administrative interest.

The government has a legitimate interest in identification and storage of an inmate's property.  Accordingly, the Texas Administrative Code requires that "[u]pon intake, a file on each inmate shall be established," which "shall include inmate property inventory." 37 TEX. ADMIN. CODE § 265.4(a)(11). The Code then provides that "[t]he receiving officer shall carefully record and store the inmate's property as it is taken." *Id.* at § 265.10; *see also Gaston*, 357 F.3d at 82 ("In order to comply with [Fed. R. Crim. P.] Rule 41, the officers sought to find out who owned the house.").  The Supreme Court has also held, in the Fourth Amendment context, that "it is reasonable for police to search the personal effects of a person under lawful arrest as part of the routine administrative procedure at a police station house incident to booking and jailing the suspect." *Illinois v. Lafayette*, 462 U.S. 630, 643 (1983).[28]

---

[28]    The Court explained that

> A range of governmental interests supports an inventory process. It is not unheard of for persons employed in police activities to steal property taken from arrested persons; similarly, arrested persons have been known to make false claims regarding what was taken from their possession at the station house. A standardized procedure for making a list or inventory as soon as reasonable after reaching the station house not only deters false claims but also inhibits theft or careless handling of articles

In this case, the record undisputedly shows that, as appellant was being booked into the jail, Officer Ramirez asked appellant if the non-contraband item discovered in the patrol car belonged to him. Upon confirming that it did, Officer Ramirez gave the item to facility personnel, who placed it with appellant's personal property for safekeeping. Based on our *de novo* review of the record, we find that the totality of the circumstances objectively show that Officer Ramirez's questions were reasonably related to a legitimate administrative concern. *See Muniz*, 496 U.S. at 601-02.

## IV. Conclusion

We hold that the trial court did not err in admitting appellant's statements under the booking-question exception to *Miranda*. Therefore, we affirm the judgment of the court of appeals.

Filed: February 8, 2012

Publish

---

taken from the arrested person.

*Lafayette*, 462 U.S. at 646. It concluded that "[e]xamining all the items removed from the arrestee's person or possession and listing or inventorying them is an entirely reasonable administrative procedure." *Id*.