**AFFIRM; Opinion Filed March 3, 2020**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-19-00003-CR**

**BRANDON EDENILSON VELASQUEZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 7**
**Dallas County, Texas**
**Trial Court Cause No. F16-12442-Y**

## MEMORANDUM OPINION
Before Justices Myers, Schenck, and Carlyle
Opinion by Justice Myers

A jury convicted appellant Brandon Edenilson Velasquez of aggravated robbery and assessed punishment at 57 years' imprisonment. In one issue, appellant contends the trial court erred in admitting evidence of gang membership and that he was harmed by this error. We affirm.

### DISCUSSION

In his issue, appellant contends the trial court erred in admitting evidence of appellant's gang membership because this evidence was gleaned from an improper custodial interrogation.

The record shows that, after appellant's arrest, Carrollton police detective

Stephen Lair, a gang expert, was brought in to talk to him. During their interview, appellant admitted he was a member of the 18th Street gang. Lair testified before the jury during the punishment phase, and appellant's complaint appears to be based on the following line of questioning that took place after the detective was shown page one of State's exhibit 130, a PowerPoint presentation consisting of a series of close-up photographs of appellant's tattoos:

Q [STATE:] All right. Detective, I'm showing you page 1 of State's Exhibit Number 130. Do you recall when this photo was taken?

A [LAIR:] I believe December of 2016.

Q Okay. And what was the purpose of—were you present when this photo was taken?

A Correct.

Q Why were you present for this photo being taken?

A I was asked to document, or to assist in the interview of an individual they suspected being an 18th Street gang member.

Q And is that the individual, Brandon Velasquez, that's on trial in this case?

A That is correct.

Q And did you have a chance to interview him regarding his—his involvement with the transnational criminal organization known as 18th Street?

A I did.

Q And based on that interview, did he verify that he was a part of that organization?

A Yes.

Appellant maintains that law enforcement officers were required to read him

the *Miranda* warnings before any statement he made during the interview could be admitted into evidence, and that his statements did not fall within any booking-question exception to *Miranda*[1] because the gang expert conducting the interview differed from the typical law enforcement personnel concerned with inmate housing. The State responds that appellant's argument is not preserved for review because the "statutory objection" made by defense counsel at trial does not comport with the constitutional issue raised on appeal. The State also argues that, assuming appellant preserved his constitutional issue, the trial court did not err in admitting the complained-of statement because it fell within the booking-question exception to *Miranda*. Alternatively, the State claims the error was harmless because the State's evidence during the punishment phase implicated appellant in two extraneous murders and included extensive evidence regarding appellant's gang membership.

On the question of preservation, appellant's brief cites the following objection by his trial counsel, made during a hearing that was held prior to Lair's testimony:

> He's testified that he has reviewed a custodial interrogation, that's the basis of his opinion. And we would just ask if he's going to testify about what was said during that custodial interrogation, that we have to have a 38.22 hearing.[2] Now, he can say, I reviewed a bunch of stuff, I reviewed interviews, but if he's going to get into what was actually said, I think we need a 38.22 for that. That's not—that's not a back way to

---

[1] *See, e.g., Alford v. State*, 358 S.W.3d 647, 654 (Tex. Crim. App. 2012) (citing *Pennsylvania v. Muniz*, 496 U.S. 582 (1990)) (explaining that routine booking questions do not violate *Miranda v. Arizona*, 384 U.S. 436 (1966), because they are "reasonably related to the police's administrative concerns").

[2] Article 38.22 of the code of criminal procedure contemplates that a trial court should hold a "hearing in the absence of the jury" to determine whether a defendant's statement is voluntary and admissible. *See* TEX. CODE CRIM. PROC. Ann. art. 38.22, § 6.

get into that information without that hearing.

Several pages later in the reporter's record, defense counsel appears to have clarified his argument: "Again, Your Honor, again, I would just object to him testifying as to what Mr. Velasquez said while in custody. They can paint it whatever they want, but, still, questions are being asked while he's in custody and under a criminal investigation, so that would be our objection." The State argues that in the only portion of the record cited by appellant, defense counsel discussed article 38.22 but not *Miranda* or the constitution, and that "[a] request based on article 38.22 explicitly cannot preserve constitutional error."

Ultimately, however, we need not resolve this question because even if we assume appellant's constitutional complaint was preserved, and that the trial court erred in admitting the complained-of statement, the error was harmless. Because the error in question is constitutional in nature, we must reverse the judgment of conviction unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a); *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010). In performing this analysis, we consider the entire record as well as (1) the nature of the error; (2) the extent it was emphasized by the State; (3) the probable implications of the error; and (4) the weight a juror or fact-finder would probably place on the error. *See Snowden v. State*, 353 S.W.3d 815, 821–22 (Tex. Crim. App. 2011). These factors are not exclusive and other considerations may logically inform our constitutional harm

analysis. *See id*. "At bottom, an analysis for whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment.'" *Id*. at 822 (quoting TEX. R. APP. P. 44.2(a)). Constitutional error does not contribute to the conviction or punishment if the conviction and punishment would have been the same even if the erroneous evidence had not been admitted. *See Clay v. State*, 240 S.W.3d 895, 904–05 (Tex. Crim. App. 2007); *Speers v. State*, No. 05–14–00179–CR, 2016 WL 929223, at *9 (Tex. App.—Dallas Mar. 10, 2016, no pet.) (mem. op., not designated for publication).

Appellant in this case was charged with aggravated robbery and, based on a plea of not guilty, a jury trial was conducted. The complainant alleged that on November 26, 2016, two men approached him as he was walking home and demanded his property at gunpoint. He could not see their faces because they were wearing bandanas but he described one of them as wearing a black hat or a black jacket. After noticing a car that was driving suspiciously, the police pulled over the vehicle, and appellant was riding in the backseat. He was wearing a black "Chicago Bulls" hat. The police searched the vehicle and found, among other things, property belonging to the complainant (a wallet, a Bluetooth speaker), loose cash, guns, and bandanas. Additionally, Franklin Villalobos, appellant's co-defendant in the aggravated robbery, testified that appellant pointed a gun at the complainant,

demanded everything he had, and then told him to run. The jury found appellant guilty.

During the punishment phase, the State introduced evidence that appellant (also known by the nickname "Big Saiko") was a sicario, or "hitman," for a transnational El Salvadoran gang, 18th Street, and that he was a party to the commission of two murders. The first murder victim was Nahum Villatoro. Villalobos testified appellant personally ordered Villatoro's murder because Villatoro covered up an 18th Street tattoo with a tattoo of an Air Jordan logo, which appellant interpreted as an insult to the gang. The second murder victim was Franklin Carrillo-Cruz. Villalobos testified that appellant was one of three gunmen who stormed into an apartment to execute Carrillo-Cruz, who was a member of the MS-13 gang—an archrival to 18th Street.

The State's punishment evidence included other evidence of appellant's gang membership. The State admitted photographs of appellant's various tattoos and expert testimony from Detective Lair, who explained how appellant's tattoos connected him to 18th Street. The State also offered photographs of appellant proudly displaying 18th Street hand signs. More 18th Street gang signs and symbols were extracted from appellant's cell phone. Villalobos explained during his punishment testimony how appellant's role as a "big boss" in 18th Street led him to commit the two extraneous murders. The jury assessed appellant's punishment at 57 years' confinement.

Testimony about the two extraneous murders dominated the punishment phase. It included testimony from sixteen witnesses over several days as well approximately 200 exhibits. Appellant's statement about his membership in 18th Street was only a small part of the State's overall punishment evidence, and it pales when compared to the far more significant—and aggravating—punishment evidence regarding the murders of Villatoro and Carrillo-Cruz. Furthermore, appellant's statement was inconsequential when considered alongside the State's other punishment evidence regarding appellant's gang membership. As the State points out in its brief, the evidence of appellant's membership in 18th Street was literally "written all over him." The State offered a number of photographs of appellant's various tattoos into evidence, and they were admitted without objection. Detective Lair explained how the tattoos related to 18th Street. And photographs of appellant displaying 18th Street gang signs were shared over social media. The State referenced appellant's statement to Lair during its closing argument, telling the jury that "[h]e's a shot caller based on his own admissions to Detective Lair . . . the gang expert you heard from," and that appellant "is a leader, a shot caller, based on his own admissions." But most of the State's argument focused on the aggravated robbery, the extraneous murders, and the other evidence of appellant's gang membership, particularly the photographs of appellant's tattoos.

After carefully reviewing the record and performing the required harm analysis, we conclude beyond a reasonable doubt that any error by the trial court in

admitting the challenged statement did not contribute to appellant's conviction or punishment. TEX. R. APP. P. 44.2(a). Accordingly, we overrule appellant's issue.

We affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
190013F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

BRANDON EDENILSON
VELASQUEZ, Appellant

No. 05-19-00003-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 7, Dallas County, Texas
Trial Court Cause No. F16-12442-Y.
Opinion delivered by Justice Myers.
Justices Schenck and Carlyle
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 3rd day of March, 2020.