# NO. 12-22-00288-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *EX PARTE:* | § | *APPEAL FROM THE 114TH* |
| | § | *JUDICIAL DISTRICT COURT* |
| *RONNIE GILBERT* | | |
| | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Ronnie Gilbert appeals the trial court's order denying his application for writ of habeas corpus, in which he asserted that the double jeopardy doctrine protects him against any subsequent prosecution.[1]  We affirm.

## BACKGROUND

Appellant was charged with the aggravated sexual assault of his estranged wife, L.G., on or about October 14, 2020.  Before trial, the State filed a notice of intent to offer evidence of other crimes, wrongs, and bad acts, including other instances of sexual assault and aggravated sexual assault of L.G. by Appellant.  During a pretrial hearing, the prosecutor stated that the State viewed the evidence of Appellant's prior sexual assaults of the victim "more as punishment evidence[,]" and he later stated, "I think it all goes to [Rule] 412, which calls for a hearing outside the presence of the jury."[2]  The case proceeded to a jury trial.

Deputy Brian Hutchins of the Smith County Sheriff's Office testified that he investigated a sexual assault of L.G. on October 14, 2020.  When the prosecutor asked Hutchins about L.G.'s demeanor when he arrived at the scene, the following exchange occurred:

---

[1] *See* TEX. CODE CRIM. PROC. ANN. art. 11.08 (West 2005).

[2] *See* TEX. R. EVID. 412 (evidence of victim's previous sexual conduct in criminal cases).

Q. How . . . was [L.G.] when you met with her? . . . tell us about her demeanor and her overall sort of disposition when you first arrived.
A. She was very upset. She was sitting on the sofa[,] and she was crying.
Q. Okay. So she's upset; she's sitting down; she's crying. Do you speak to her to understand . . . what had happened to her?
A. Yes, sir.
Q. And was she able to tell you her story about what happened?
A. Yes, sir.
Q. And can you tell – tell the jury what [L.G.] said on October 14, 2020[?]
A. She said that the – her and Mr. Gilbert were going through a divorce or they were separated and – since December and that he had assaulted her five times since August the 11th and that . . . night was the last time. It was the last –
Q. Specifically on October 14th, did she walk you through what had happened to her?
A. Yes. Yes.

Hutchins testified that L.G. reported that when she arrived home, her stepfather was handcuffed and sitting on the sofa, and Appellant had a gun in one hand and zip ties in the other. L.G. told Hutchins that Appellant took her and her stepfather to Appellant's residence, where he zip tied her stepfather to a chair and sexually assaulted her. According to Hutchins, Appellant admitted having sexual intercourse with L.G. on October 14, but he claimed it was consensual.

Outside the jury's presence, defense counsel argued that the State opened the door to evidence regarding Appellant's prior sexual assaults of L.G. Defense counsel asserted that he did not intend to ask L.G. about the details of the sexual assaults, but he stated, "I'm certainly going to get into the fact that she did make allegations to these police officers that my client sexually assaulted her four other times prior to October the 14th, which is already – the State already opened up the door." The prosecutor stated, "[Defense counsel] is right. My witness said that. He was instructed not to, and he did." Defense counsel argued that he was entitled to ask L.G. why she did not report the alleged prior assaults to the police because "it's going to go to the motive, fabrication, and bias of the witness."

Subsequently, Detective Lauren Fite, a crime scene investigator with the Smith County Sheriff's Office, testified that she was dispatched to process the scene, and she recovered a firearm and handcuffs. She also collected a bag of zip ties, swabbed them, and sent them to the laboratory for testing, which yielded inconclusive results. Fite did not measure the zip ties or compare them to the chair to which L.G.'s stepfather was tied. When asked on the stand to measure the zip tie and the arm area of the chair, Fite testified that the chair is smaller than the molding of the zip tie. Fite further testified that the curvature of the zip tie is wide enough to encompass the arm of the

chair, and she explained that she does not know whether all the zip ties used in the offense were recovered.

After conducting a Rule 412 hearing, the trial judge stated, "we probably have . . . a mess on our hands without an easy solution[,]" and he expressed concern that the only way to protect both the defense and the victim "is to declare a mistrial based on those allegations coming in." The trial judge commented, "I don't think there was any intent and certainly wouldn't find any misconduct or intentionally causing a mistrial on the part of the State." The trial judge added, "it's sort of ludicrous to think that the first witness out of the gate, that would be the strategy." The trial judge told defense counsel that he was "open to granting" a motion for mistrial.

Defense counsel argued that if the State would withdraw its objection to the admissibility of the prior sexual assaults, the trial could proceed, and he argued that the prior assaults were admissible to prove the victim's motive or bias. The prosecutor refused to withdraw the State's objection to the defense questioning L.G. regarding the prior sexual assault allegations. The trial judge reiterated that if the case proceeded, he would not permit the defense to examine L.G. regarding the prior assaults. Defense counsel then stated, "based on the Court's ruling, if we were to continue to go forward with those limitations, . . . I believe we're forced to ask the Court to grant a mistrial in this case." After commenting that the circumstance facing the court "was created through no fault of either party but through the actions and statements of this one witness," the trial court granted defense counsel's motion for mistrial.

Appellant filed an application for writ of habeas corpus, in which he asserted that the double jeopardy doctrine bars any subsequent prosecution. Appellant argued that the prosecutor intentionally elicited Hutchins's testimony regarding prior sexual assaults, and he contended that he was forced to request a mistrial. The trial court conducted an evidentiary hearing, at which the prosecutor and Hutchins testified.

The prosecutor testified that Hutchins was the second witness the State called at trial. The prosecutor explained that he met with Hutchins before Hutchins took the stand. The prosecutor further testified that he specifically instructed Hutchins not to mention the prior sexual assault allegations because he did not believe the evidence was admissible during guilt-innocence. The prosecutor explained that he asked Hutchins to study his report beforehand, and he testified that he cut Hutchins off after he mentioned the allegations on the stand. In addition, the prosecutor

testified that he was taken aback when Hutchins mentioned the allegations,[3] and he stated, "it was not my intent to go . . . into any of those other allegations. . . . It was not my intent to go into any of that or to goad the defense into asking for a mistrial[.]"

Hutchins testified that he recalled meeting with the prosecutor before trial. He explained that the prosecutor instructed him to review his report and try to memorize it, but he did not recall being told not to mention the prior sexual assaults. Hutchins testified that he was concerned that he said something on the stand that he should not have said because "both sets of attorneys started talking to each other." The trial judge denied habeas relief, and this appeal followed.

## DOUBLE JEOPARDY

In his sole issue, Appellant argues that the trial court abused its discretion by denying his application for writ of habeas corpus, thereby "declining to bar his retrial as a violation of double jeopardy." Specifically, Appellant contends the State intentionally goaded him into requesting a mistrial.

### Standard of Review and Applicable Law

We review a trial court's decision to grant or deny an application for a writ of habeas corpus under an abuse of discretion standard, and we review the record evidence in the light most favorable to the trial court's ruling. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). The trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules and principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). We must give deference to the trial court's resolution of historical facts supported by the record, as well as application-of-law-to-fact questions that turn on credibility and demeanor. *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012). We review de novo the trial court's rulings on application-of-law-to-fact questions that do not turn upon credibility and demeanor. *Id*.

"The double jeopardy provisions of the federal and Texas constitutions protect a citizen from repeated attempts at prosecution for the same criminal offense." *Ex parte Wheeler*, 203 S.W.3d at 322; *see* U.S. CONST. amend. V; TEX. CONST. art. I, § 14. When a mistrial is granted at the defendant's request, double jeopardy principles generally do not bar a retrial. *Oregon v.*

---

[3] The trial judge commented during the hearing that the prosecutor looked shocked when Hutchins mentioned the previous sexual assaults on the stand.

*Kennedy*, 456 U.S. 667, 673, 102 S. Ct. 2083, 2088, 72 L. Ed. 2d 416 (1982). However, when the defendant demonstrates that the prosecution engaged in conduct that was intended to provoke the defendant into moving for a mistrial, double jeopardy principles bar retrial. *Id.*, 456 U.S. at 679, 102 S. Ct. at 2091; *Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007) (adopting standard announced in *Oregon v. Kennedy* for determining when to grant double jeopardy relief following defense-requested mistrial).

An applicant for habeas corpus relief must prove his claim by a preponderance of the evidence. *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013); *Kniatt*, 206 S.W.3d at 664. In addition, an applicant must ensure that a sufficient record is presented to demonstrate error requiring reversal. *Ex parte Chandler*, 182 S.W.3d 350, 353 n.2 (Tex. Crim. App. 2005). To be entitled to habeas corpus relief on double jeopardy grounds, Appellant was required to establish by a preponderance of the evidence that the prosecutor engaged in conduct that was intended to provoke him into moving for a mistrial. *See Kennedy*, 456 U.S. at 679; *Ex parte Masonheimer,* 220 S.W.3d 494, 507-08 (Tex. Crim. App. 2007). According to the Texas Court of Criminal Appeals, courts should consider the following list of non-exclusive factors in assessing the prosecutor's state of mind:

(1) Was the misconduct a reaction to abort a trial that was "going badly for the State?" In other words, at the time that the prosecutor acted, did it reasonably appear that the defendant would likely obtain an acquittal?
(2) Was the misconduct repeated despite admonitions from the trial court?
(3) Did the prosecutor provide a reasonable, "good faith" explanation for the conduct?
(4) Was the conduct "clearly erroneous"?
(5) Was there a legally or factually plausible basis for the conduct, despite its ultimate impropriety?
(6) Were the prosecutor's actions leading up to the mistrial consistent with inadvertence, lack of judgment, or negligence, or were they consistent with intentional or reckless misconduct?

*Wheeler*, 203 S.W.3d at 323-24.

**Analysis**

We use the *Wheeler* factors to guide our analysis. *See id*. at 324. The only witness who testified before Hutchins was a person to whom L.G. made an outcry regarding the aggravated sexual assault of October 14, 2020.[4] Appellant points to Fite's testimony about the zip ties and

---

[4] The first witness called at trial testified that on the night of October 14, 2020, L.G. called him, and then L.G. and her stepfather came to his home. He explained that L.G. said Appellant sexually assaulted her.

contends that the trial was going badly for the State. However, Fite had not yet testified when Hutchins mentioned the previous sexual assaults. Nothing in the record indicates that when Hutchins testified about the previous sexual assaults, the trial was going badly for the State. *See id*. In addition, the record does not reflect that the trial court ever admonished the prosecutor about any misconduct on his part. *See id*. Moreover, the prosecutor provided a reasonable, good faith explanation, *i.e.*, that he specifically instructed Hutchins before trial not to mention the previous assaults, and he was surprised when Hutchins did so and immediately interrupted Hutchins and redirected him. *See id*. The trial judge noted that the prosecutor appeared surprised by Hutchins's answer. *See id*. Furthermore, although the prosecutor's question to Hutchins about what the victim said on the night in question was broad and open-ended, the question was not clearly erroneous. *See id*. The trial judge, acting as factfinder at the hearing on Appellant's application for writ of habeas corpus, was entitled to believe the prosecutor's testimony that he did not intend to elicit the complained-of testimony from Hutchins and find that the prosecutor did not deliberately engage in misconduct by asking Hutchins a broad, open-ended question. *See Wheeler*, 203 S.W.3d at 324; *see also Alford*, 358 S.W.3d at 652. Lastly, on this record, the trial court did not abuse its discretion by concluding that the prosecutor's actions leading up to the mistrial are most consistent with inadvertence or negligence rather than intentional conduct. *See Alford,* 358 S.W.3d at 652; *Wheeler*, 203 S.W.3d at 324; *Montgomery*, 810 S.W.2d at 380.

Viewing the evidence in the light most favorable to the trial court's ruling, the record does not demonstrate prosecutorial misconduct intended to goad Appellant into requesting a mistrial. *See Kennedy*, 456 U.S. at 679, 102 S. Ct. at 2091; *Lewis*, 219 S.W.3d at 371; *Wheeler*, 203 S.W.3d at 323-24. Therefore, Appellant has not met his burden of showing that double jeopardy bars further prosecution. *See Kniatt*, 206 S.W.3d at 664. Accordingly, we overrule issue one.

## DISPOSITION

Having overruled Appellant's sole issue, we *affirm* the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered April 20, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 20, 2023**

**NO. 12-22-00288-CR**

**EX PARTE: RONNIE GILBERT**

Appeal from the 114th District Court
of Smith County, Texas (Tr.Ct.No. 114-1992-20)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that the decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*