

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| EMMANUEL ARMENDARIZ, | § | No. 08-13-00125-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | |
| | § | 409th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | |
| | § | (TC#20100D06116) |
| | § | |

## **O P I N I O N**

Appellant Emmanuel Armendariz pleaded guilty to a two-count indictment charging him with injury to a child and manslaughter. The trial court sentenced Appellant to three years' confinement for each count, to run concurrently. Appellant appeals the trial court's refusal to suppress his recorded statement. He asserts the trial court erroneously found that he was *not* in custody at the time he provided his recorded statement, and complains the trial court failed to conduct a totality-of-the-circumstances review and hold the State to its burden to prove he effectively waived his rights. We conclude there is no reversible error and affirm.

## **BACKGROUND**

Appellant picked up his two-year-old son from his mother-in-law before noon on August

27, 2010.   After arriving home, Appellant forgot his son was in the truck and left him there while he prepared for an upcoming trip to Las Vegas and ran some errands with his father-in-law. Several hours later, Appellant discovered his son was still in the truck.   The child had died.   That evening around 9 p.m., Appellant provided a video-recorded statement to the police.

The trial court held a suppression hearing to determine, among other things, whether Appellant's recorded statement should be suppressed.   Following the hearing, the trial court entered findings of fact and conclusions of law, including a finding that when the police detective met with Appellant to take his recorded statement, "at the time the defendant was not under arrest." The court entered a related conclusion of law stating:   "The Court finds that [Appellant] was not under arrest when he provided the recorded statement to Detective Varela."   Ultimately, the trial court concluded "that Emmanuel Armendariz intentionally, knowingly and voluntarily waived his rights when he provided the recorded statement to Detective Varela[,]" and that Appellant's recorded statement was voluntary and "complies with the provisions of Texas Code of Criminal Procedure Section 38.22."

## DISCUSSION

### Standard of Review

We review a trial court's ruling refusing to suppress evidence for an abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex.Crim.App. 2010); *Ramos v. State,* 245 S.W.3d 410, 417–18 (Tex.Crim.App. 2008).   In reviewing the trial court's decision, we review the evidence in the light most favorable to the trial court's ruling.   *State v. Kelly,* 204 S.W.3d 808, 818 (Tex.Crim.App. 2006).   We afford almost total deference to a trial court's determination of historical facts, but review pure questions of law de novo.   *Alford v. State*, 358 S.W.3d 647, 652 (Tex.Crim.App.

2

2012); s*ee Montanez v. State,* 195 S.W.3d 101, 109 (Tex.Crim.App. 2006). Likewise, we give almost total deference to a trial court's resolution of mixed questions of law and fact if those questions turn on the credibility and demeanor of witnesses. *Alford*, 358 S.W.3d at 652. However, if credibility and demeanor are not necessary to the resolution of a mixed question of law and fact, we review the question de novo. *See id*.; *Young v. State*, 283 S.W.3d 854, 873 (Tex.Crim.App. 2009). This same deferential standard of review applies to a trial court's determination of historical facts, demeanor, and credibility even when that determination is based on a video recording. *State v. Duran*, 396 S.W.3d 563, 570 (Tex.Crim.App. 2013). The trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Ramos*, 245 S.W.3d at 418.

**Finding and Conclusion that Appellant was Not Under Arrest**

In Issue One, Appellant contends the trial court abused its discretion in finding and concluding he was *not* under arrest when he gave his recorded statement.

At the suppression hearing, Detective Varela of the Socorro Police Department testified that Appellant was under arrest at the time he took Appellant's recorded statement. Detective Chavez of the El Paso Sheriff's Department also testified that Appellant was under arrest at the Socorro Police station when he first contacted Appellant. Moreover, Detective Chavez's partner, Detective Santibanez, testified Appellant was under arrest when he arrived at the Socorro Police station after 9 p.m. Despite this testimony, the trial court entered a finding of fact that when Detective Varela met with Appellant, he "was not under arrest," and entered a conclusion of law that Appellant "was not under arrest when he provided the recorded statement to Detective Varela." The trial court also concluded Appellant's recorded statement was voluntary and

3

complied with Article 38.22 of the Texas Code of Criminal Procedure.

*Analysis*

The State concedes the trial court's legal conclusion that Appellant was "not under arrest" has no basis in the record and is without support. We agree with the State there is no basis in the record for the finding and conclusion that Appellant was not under arrest when he gave his statement. Detectives Varela, Chavez, and Santibanez each testified that Appellant was under arrest when they met with him.

The State also argues, however, that the trial court's erroneous finding is not dispositive; it is merely entitled to no deference. We agree. Normally if the court's findings are supported by the record, we are not at liberty to disturb them, and we will only address whether the trial court improperly applied the law to the facts. *State v. Wood*, 828 S.W.2d 471, 474 (Tex.App. – El Paso 1992, no pet.). When, however, a trial court's findings are not supported by the record, we do not defer to those findings. *See Garcia v. State,* 919 S.W.2d 370, 379 (Tex.Crim.App. 1994) (deference not given to trial court's suppression-hearing findings that were not supported by record on appeal); *Derichsweiler v. State*, 301 S.W.3d 803, 812 (Tex.App. –Fort Worth 2009) (trial court's finding of fact after suppression hearing was not supported by the record and was not entitled to deference), *rev'd on other grounds*, 348 S.W.3d 906 (Tex.Crim.App. 2011). Because there is no evidence to support the trial court's finding and conclusion that Appellant was not under arrest at the time he provided his oral statement, we give the finding and conclusion no deference.

The real question then is the impact, if any, of this erroneous finding and conclusion. Appellant's reasoning is hard to follow in this regard, but it hinges on Article 38.22 and its

4

requirements.[1]   Appellant appears to contend that because Article 38.22 applies only to statements made as a result of a custodial interrogation,[2] the trial court's finding and conclusion that he was *not* under arrest at the time he gave his statement somehow conflict with the trial court's conclusion that his recorded statement was voluntary and complied with Article 38.22.   Appellant apparently asserts that this conflict somehow invalidates the trial court's conclusion that he knowingly and voluntarily waived his rights.   On this basis, Appellant requests that we reverse and reform the judgment.

We are at a loss to see how the trial court's determination had any effect on Appellant's rights.   If Appellant was in custody, he was entitled to all the protections provided by Article 38.22, and his recorded statement was admissible only if it was made knowingly and voluntarily. But, even if Appellant was *not* in custody, he was still entitled to a determination whether his statement was voluntary, since the mandate in Article 38.22 that statements be voluntary applies to both an accused's custodial and noncustodial statements.   *Oursbourn v. State*, 259 S.W.3d 159, 171 (Tex.Crim.App. 2008).

In any event, we conclude that because the uncontroverted evidence establishes Appellant was under arrest at the time of his statement, he was entitled to the Article 38.22 protections. Consequently, there is no conflict with the trial court's conclusion that Appellant's recorded statement was voluntary and complies with Article 38.22.   Appellant is not entitled to reversal or reformation of the judgment.   We simply proceed to determine if the evidence supports the trial

---

[1] Article 38.22 provides that no oral statement of an accused made as a result of a custodial interrogation shall be admissible against the accused in a criminal proceeding unless certain requirements have been satisfied, including that prior to the statement, but during the recording, the accused is given his *Miranda* warnings and the accused knowingly, intelligently, and voluntarily waives those rights.   *See* TEX.CODE CRIM.PROC.ANN. art. 38.22, §§ 2(a), 3 (West Supp. 2014).

[2] Article 38.22 applies only to oral statements made as a result of a custodial interrogation.   TEX.CODE CRIM. PROC.ANN. art. 38.22, § 3; *see also id.* at § 5 (nothing in Article 38.22 precludes the admission of a statement "that does not stem from custodial interrogation").

court's conclusion that Appellant's statement was made voluntarily.

## Knowing, Intelligent, and Voluntary Waiver

In Issue Two, Appellant contends the trial court erroneously failed to consider the totality of the circumstances in its review and to hold the State to its burden to prove he effectively waived his rights.

At the suppression hearing, Detective Varela testified he advised Appellant of his rights during Appellant's recorded statement, and that Appellant indicated that he understood his rights and agreed to waive them. Detective Varela explained that he did not threaten or coerce Appellant to provide a statement nor promise Appellant anything in return. Detective Varela stated that Appellant did not appear to be under the influence of any drug or alcohol at the time of his recorded statement, and that Appellant never asked for an attorney or that the interview be stopped. Appellant was never denied the use of a restroom, or food, or cigarettes.

Appellant's recorded statement was admitted into evidence for purposes of the suppression hearing. The recording shows Detective Varela informing Appellant he is going to read him his rights and asking Appellant to inform him if he has any questions about his rights. In response, Appellant nods his head up and down. Detective Varela then proceeds to inform Appellant of his right to remain silent and that anything he says can be used against him, and the video shows Appellant indicating his understanding of this right by nodding his head in assent and stating "yeah." When Varela informs Appellant of his right to counsel and to have counsel present during questioning, Appellant interrupts and asks "What are you guys doing right now?" Detective Varela explains they will soon be talking about the case but that now he is reading Appellant his rights "so that that way you'll know"; Appellant again interjects "But you guys are

6

going to start asking questions, right?" Appellant states, "I mean, there's nothing wrong but I'm just saying, I don't want to say something that's going to fuck my shit up." Detective Varela responds that he understands and explains "What I want to know is if you understand that right to counsel." Appellant nods his head up and down, and states "I understand." Detective Varela continues the warnings and informs Appellant of his right to have an attorney appointed prior to questioning if Appellant is unable to afford an attorney. Appellant again affirmatively nods his head up and down. When Detective Varela asks Appellant whether he understands that he can stop the interview at any time if he decides to answer questions without an attorney, Appellant nods his head up and down, puts his head in hands, and answers, "Yes, sir." Finally, when Appellant is asked whether he is making this statement "out of your own free will," Appellant again affirmatively nods his head up and down.

Appellant then proceeds to respond to questions about the incident, often speaking in the narrative for extended periods of time, so much so that Detective Varela at times informs Appellant "I might stop and ask you some questions." At one point, after speaking in the narrative for a time, Appellant asks, "What do I do now?" The other officer in the room, Officer Juarez, responds, "I can't answer you that." After another lengthy narrative from Appellant, Officer Juarez explains: "We've . . . pretty much asked you whatever questions we needed to find out. Is there something that you think we need to know . . . something that we haven't asked? Something you may want to say at this time?" Appellant shakes his head back and forth in the negative, and the interview is concluded. The entire recorded interview lasted slightly under fifteen minutes. During this time, Appellant never requested counsel and never asked that the interview be stopped. During the interview, Appellant is seated and not restrained in any way.

7

Appellant and the officers speak in English, and on a few occasions, Appellant uses Spanish terminology.

*Limited Review of Video Recording*

We note that our review of the video recording in particular is somewhat limited because in answering the issue of a knowing and voluntary waiver, we must analyze Detective Varela's demeanor in asking the questions and Appellant's demeanor in answering those questions. The trial court concluded from its review of the video recording that Appellant's waiver was voluntary. And we can assume the trial court concluded that there was nothing about Detective Varela's tone or manner that was so overbearing as to render Appellant's statement involuntary. Further, we can assume the trial court concluded that Appellant's demeanor indicated that he understood what was going on and knowingly and intelligently waived his rights. We are required to give almost total deference to the trial court's determination of demeanor even when that determination is based on a video recording. *See Duran,* 396 S.W.3d at 570. Applying this "almost total deference" standard, we conclude that the trial court did not abuse its discretion in finding and concluding that Appellant's statement was knowingly, intelligently, and voluntarily given.

*Analysis*

As a general rule, a determination whether a statement was voluntarily rendered is analyzed by examining the totality of the circumstances. *Arizona v. Fulminante,* 499 U.S. 279, 285–86, 111 S.Ct. 1246, 1252, 113 L.Ed.2d 302 (1991); *see Delao v. State*, 235 S.W.3d 235, 239 (Tex.Crim.App. 2007). It is the State's burden to show that a defendant knowingly, intelligently, and voluntarily waived his rights under *Miranda v. Arizona*, 384 U.S. 436, 444-45, 86 S.Ct. 1602,

1612, 16 L.Ed.2d 694 (1966),[3] and Article 38.22 of the Texas Code of Criminal Procedure. *Joseph v. State*, 309 S.W.3d 20, 24 (Tex.Crim.App. 2010).

In this regard, the Court of Criminal Appeals has reiterated "'that neither a written nor an oral express waiver is required'" before a statement is admissible under the mandates of Article 38.22. *Id.* (quoting *Watson v. State*, 762 S.W.2d 591, 601 (Tex.Crim.App. 1988)); *Barefield v. State*, 784 S.W.2d 38, 40-41 (Tex.Crim.App. 1989)(noting that the oral confession statute does not require an "express verbal statement from an accused that he waives his rights prior to giving the statement"), *overruled on other grounds, Zimmerman v. State*, 860 S.W.2d 89, 94 (Tex.Crim.App. 1993). Rather, a waiver of one's Article 38.22 rights may be "'inferred from the actions and words of the person interrogated.'" *Joseph*, 309 S.W.3d at 24-25 (quoting *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)). But that waiver must still be knowingly, intelligently, and voluntarily made. *Joseph*, 309 S.W.3d at 25.

In evaluating whether a waiver is knowingly, intelligently, and voluntarily made, we employ a two-part test, asking: (1) whether the relinquishment of the right was voluntary by determining whether it was the product of a free and deliberate choice rather than intimidation, coercion, or deception; and (2) whether the waiver was made with full awareness of the nature of the rights being abandoned and the consequences of the decision to abandon it. *Id.* at 25 (citing *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). "Only if the

---

[3] " Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned." *Miranda*, 384 U.S. at 444-45, 86 S.Ct. at 1612.

'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran*, 475 U.S. at 421. In reviewing the totality of the circumstances, we may consider the defendant's background, experience, and conduct. *Joseph*, 309 S.W.3d at 25 (citing *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979)).

The totality of the circumstances surrounding the interrogation shows Appellant's waiver was voluntary. Appellant nodded in the affirmative when asked whether he was giving his statement of his own free will. Immediately after Detective Varela informed Appellant of his rights, Appellant repeatedly indicated that he understood those rights and immediately and willingly participated in the fifteen-minute interrogation. In fact, Appellant was eager to tell his story, forcing Detective Varela to advise Appellant he may have to interrupt Appellant to pose questions. The recording shows that Appellant never asked to stop the interrogation. At the suppression hearing, Detective Varela testified that he did not threaten or coerce Appellant's statement, nor promise anything to Appellant in return. Further, the record does not show any evidence of intimidation or coercion, such as resorting to physical or psychological pressure to elicit statements, or making promises that could have possibly jeopardized the voluntariness of Appellant's statement. The parties remained calm throughout the entire interrogation process, and Appellant freely explained the events of the day, how he found his son, and why he thought he had forgotten about his son in his truck.

We also conclude that the totality of the circumstances demonstrates Appellant's waiver was made with full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them. Appellant was given all the required warnings

mandated by Article 38.22, including that Appellant was not required to say anything and could stop the interview at any time, and after each question Appellant was asked if he understood his rights. Appellant consistently answered in the affirmative, either by nodding his head up and down or through an affirmative statement indicating his understanding. Appellant then freely answered all the questions posed, and provided extensive narratives on occasion without any prompting for him to do so. With the exception of a few Spanish terms uttered by Appellant, all questions, answers, and narratives were stated in English.

As the Court of Criminal Appeals noted in *Joseph*, "[t]he warnings read to Appellant made him fully aware of the rights set forth in *Miranda* and Article 38.22, as well as the consequences of abandoning those rights." *Joseph*, 309 S.W.3d at 27 (citations omitted). By indicating his understanding of the rights and then freely answering the questions without ever asking the interview to cease, Appellant's conduct undoubtedly demonstrated his awareness of his rights and his knowing waiver of those rights. Based on the totality of the circumstances, the trial court could reasonably infer a knowing waiver from Appellant's words and actions. Both the testimony at the suppression hearing and the recorded interview establish that Appellant knowingly, intelligently, and voluntarily waived his rights.

Appellant contends the trial court did not conduct a totality-of-the-circumstances review and asserts that the trial court did not enter a proper finding. We observe, however, that the trial court indicated it was going to review the recorded interrogation carefully and then included among its legal conclusions "that Emmanuel Armendariz intentionally, knowingly and voluntarily waived his rights when he provided the recorded statement to Detective Varela[,]" and "that the statement made by Emmanuel Armendariz was voluntary and complies with the provisions of

11

Texas Code of Criminal Procedure Section 38.22." This demonstrates that in making its decision, the trial court considered both the testimony from the hearing and the content of Appellant's recorded statement.

The recorded statement contained the requisite warnings informing Appellant of his rights, and the record demonstrates that Appellant knowingly, intelligently, and voluntarily waived those rights. Consequently, Appellant's recorded statement was admissible, and the trial court did not abuse its discretion in denying Appellant's motion to suppress. Issues One and Two are overruled.

## CONCLUSION

The trial court's judgment is affirmed.


STEVEN L. HUGHES, Justice

May 8, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)