

# NUMBER 13-19-00275-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

THE STATE OF TEXAS,                                                    Appellant,

v.

ISABELLA RODRIGUEZ,                                                    Appellee.

---

### On appeal from the County Court at Law No. 15
### of Bexar County, Texas.

---

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Tijerina**
**Memorandum Opinion by Justice Tijerina**

The State of Texas appeals the trial court's order granting appellee Isabella Rodriguez's motion to suppress evidence following a traffic stop. By two issues, the State argues the trial court erred in concluding the detaining officer lacked (1) reasonable suspicion to believe that Rodriguez committed the offense of driving while intoxicated (DWI) and (2) probable cause to arrest her. *See* TEX. PENAL CODE ANN. § 49.04. We

affirm.[1]

## I. BACKGROUND

Rodriguez was charged by information with DWI on April 20, 2018. *See id.* Rodriguez subsequently filed a motion to suppress oral statements and her arrest during the traffic stop.

Officer Trevor Tustison with the San Antonio Police Department was the State's sole witness at the suppression hearing. He testified that he stopped Rodriguez's vehicle for speeding. Once Officer Tustison made contact with Rodriguez, he noticed that she had "kind of a glazed look" and that she looked "a little lethargic." Rodriguez told him that she needed to use the restroom and that is why she was speeding. He smelled a faint odor of intoxicants, but "it was faint enough to where [he] wasn't entirely sure o[f] the origin." Rodriguez told Officer Tustison she was on her way from a sorority community service event. She produced her driver's license and gave her name and date of birth. Officer Tustison asked Rodriguez how much she had to drink, and she responded, "none." Officer Tustion testified that he asked Rodriguez to step out of her vehicle, and at this point, his traffic stop for speeding became a DWI investigation.

On cross-examination, Officer Tustison admitted Rodriguez was not swerving or getting into cross traffic. He stated that his reason for suspecting DWI was the fact that she was speeding and that she "came up very close to [his] vehicle at a high rate of speed and then slowed down immediately." He testified that when he pulled Rodriguez over, she

---

[1] This appeal was transferred to this Court from the Fourth Court of Appeals in San Antonio by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts); 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

2

did not have any trouble parking and that nothing stood out about her parking. He concluded that she stepped out of her vehicle without any problems, and she was not fumbling or shaking while retrieving her driver's license. He testified that he performed a "preliminary HGN test," which he agreed was an invalid test. Officer Tustison's dash cam video was submitted into evidence. The "invalid" HGN test portion of the dash cam video was not entered into evidence, and it was not played for the trial court.

The trial court granted Rodriguez's motion to suppress and issued findings of fact and conclusions of law pursuant to the State's request. This interlocutory appeal followed. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5).

## II. MOTION TO SUPPRESS

By its first issue, the State argues the trial court erred in concluding that Officer Tustison lacked reasonable suspicion to believe that Rodriguez committed the offense of DWI.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We afford almost total deference to a trial court's determination of historical facts when supported by the record, but we review pure questions of law de novo. *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012). Likewise, we defer to a trial court's resolution of mixed questions of law and fact if those questions turn on the credibility and demeanor of witnesses. *Id.* However, if credibility and demeanor are not necessary to the resolution of a mixed question of law and fact, we review the question de novo. *Id.*

3

When the trial judge makes express findings of fact, as here, we first determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Valtierra v. State,* 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). "[W]hen evidence is conclusive, such as . . . 'indisputable visual evidence,' then any trial court findings inconsistent with that conclusive evidence may be disregarded as unsupported by the record, even when that record is viewed in a light most favorable to the trial court's ruling." *Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012). That said, a trial court's findings of historical fact based on a videotape recording are reviewed under a "deferential standard" and we must defer to those findings unless the video recording "indisputably contradicts" them. *Carter v. State*, 309 S.W.3d 31, 40 (Tex. Crim. App. 2010); *State v. Houghton*, 384 S.W.3d 441, 446 (Tex. App.—Fort Worth 2012, no pet.).

We uphold the trial court's ruling if it is supported by the record and is correct under any theory of law applicable to the case. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008). Thus, if supported by the record, a trial court's ruling on a motion to suppress will not be overturned. *Mount v. State*, 217 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Here, we review de novo whether Officer Tustison was justified in converting the traffic stop into an investigative detention for DWI. *See State v. Ford*, 537 S.W.3d 19, 23 (Tex. Crim. App. 2017) ("[W]hether the facts, as determined by the trial court, add up to reasonable suspicion . . . is a question to be reviewed de novo.").

4

**B.    Reasonable Suspicion**

The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV. "A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). A routine traffic stop is more analogous to a so-called *Terry* stop than to a formal arrest. *Id.* "Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Id.* Because addressing the infraction is the purpose of the stop, it may not last longer than necessary to effectuate that purpose. *Id.* "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* "Beyond determining whether to issue a citation, an officer's mission includes ordinary inquiries incident to the traffic stop, such as checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355.

Reasonable suspicion exists if the officer has specific, articulable facts that, combined with rational inferences from those facts, would lead the officer to reasonably conclude that the person is, has been, or soon will be engaged in criminal activity. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). We consider the totality of the circumstances to make a reasonable-suspicion determination. *Curtis v. State*, 238 S.W.3d 376, 379 (Tex. Crim. App. 2007).

A person commits the offense of driving while intoxicated if he "is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04(a).

5

"Intoxicated" means "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." *Id.* § 49.01(2)(A). Thus, we must determine whether under the totality of the circumstances, Officer Tustison had specific, articulable facts that, combined with rational inferences from those facts, led him to reasonably conclude that Rodriguez was driving her vehicle while not having the normal use of her mental or physical faculties by reason of the introduction of alcohol into her body. *See Evans,* 500 S.W.3d at 537; *see also Rodriguez*, 575 U.S. at 354 ("A seizure justified only by a police-observed traffic violation . . . become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission of issuing a ticket for the violation."); *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997) (noting that an investigative stop which is reasonable at its inception may violate the Fourth Amendment because of excessive intensity or scope).

**C.      Analysis**

There is no dispute here that Officer Tustison had reasonable suspicion to make the initial traffic stop because he observed Rodriguez commit a traffic violation. The question in this case is whether Officer Tustison, after the traffic stop, had reasonable suspicion to investigate whether she was driving while intoxicated.[2] *See Evans*, 500 S.W.3d at 537.

The State argues that Officer Tustison had reasonable suspicion to investigate whether Rodriguez was driving while intoxicated because of the following circumstances:

---

[2] We note that the parties do not deny that the stop was prolonged, i.e., lasted longer than necessary to check Rodriguez's driver's license and issue a ticket.

the day of the week and time of night, the fact that she was coming from a sorority event, and Officer Tustison's testimony regarding Rodriguez's alleged glazed look, lethargic reactions, the faint odor of alcohol, and her slow response time. However, "[t]he trial court considered more than just the specific instances of [Officer Tustison's] testimony pointed out by the State." *See id.* The trial court considered the totality of the circumstances, and found the following:

1. Officer Tustison detained Isabella Rodriguez for speeding and that she "came up too fast" to his unit at approximately 12:30 a.m.

2. Officer Tustison testified that he noticed Rodriguez had a glazed look and looked a little lethargic.

3. Officer Tustison smelled a faint odor of intoxicants but was faint enough that he was unsure of the origin.

4. Officer Tustison was aggressive in his demeanor and approach with Rodriguez.

5. Officer Tustison described Rodriguez as slow to respond, and he felt she might be under the influence of something.

6. On the video, Rodriguez was soft-spoken. Her speech was clear and not slurred. She was polite and nervous.

7. Rodriguez appropriately parked her car in a parking space between lines.

8. Rodriguez gave her name and date of birth without issues.

9. She stated she needed to use the restroom as the basis for speeding.

10. Officer Tustison did not see any problems with Rodriguez getting out of her car. She did not stumble or fall and was steady on her feet.

11. She consistently denied drinking.

12. Officer Tustison did not have any problems communicating with Rodriguez.

13. Officer Tustison testified that he did not perform a valid HGN test. He described it as "preliminary, just to make sure."

14. Officer Tustison did not have specific articulable facts or reasonable inferences therefrom that would cause a reasonable person to believe that Rodriguez was, had been, or soon would be engaged in criminal conduct when he performed an incomplete, invalid HGN.

In its conclusions of law, the trial court determined that Officer Tustison unlawfully prolonged the legitimate traffic stop on a "mere hunch"; and that he lacked reasonable suspicion to investigate Rodriguez for DWI because she did not exhibit signs of impairment when she exited the vehicle; she was not unsteady; she did not exhibit slurred speech; she consistently denied drinking; she had at most, "a faint odor" of alcohol; and she handed Officer Tustison her license as requested and gave her name and date of birth without any issues. The trial court reiterated that it was the sole judge of the credibility and demeanor of the witnesses. It further concluded that "from the lack of evidence of impairment when [Rodriguez] pulled over and exited her vehicle, the court finds it apparent that Officer Tustison made his mind up that [Rodriguez] was driving while intoxicated when he pulled her over and did not have reason to continue her detention."

The State challenges two of the trial court's findings, contending they are clearly contrary to the record and evidence: (1) that Rodriguez appeared to be soft-spoken, but her speech was clear and not slurred, and (2) that Officer Tustison did not have problems communicating with Rodriguez. We disagree that these findings are contrary to the record and evidence. The dash cam video shows that Rodriguez: did not have trouble parking her vehicle; did not have a glazed or dazed look in her eyes; was not belligerent or argumentative; did *not* slur her speech, much less exhibit a "heavy slur" as the State

8

asserts; retrieved her license as requested; and did not have problems communicating with Officer Tustison; she answered every question asked of her and was polite. We further note that as Rodriguez stepped out of her vehicle, she did not sway, she was steady on her feet, she stood still and erect for a significant period, and she did not stumble.[3] *See id.* (concluding that the officer lacked reasonable suspicion though he smelled alcohol emanating from the vehicle and on the defendant's breath; the defendant admitted consuming two alcoholic beverages; the defendant was not slow to respond to the officer's emergency lights and pulled over in safe manner; the officer did not observe evidence of impairment when the defendant exited the vehicle; and the video reflected the defendant did not exhibit signs of intoxication, as he was not unsteady, stood still and erect for significant period of time, was polite, did not have slurred speech, and walked normally).

We conclude the evidence supports the trial court's findings that Rodriguez's speech was clear and not slurred and Officer Tustison did not have problems communicating with Rodriguez. *See Valtierra,* 310 S.W.3d at 447. Moreover, Rodriguez's denial of alcohol consumption is not evidence that she was consuming alcohol. Because the trial court did not find Officer Tustison's testimony credible in light of the video, there are no specific articulable facts in this case that point to Rodriguez not having the normal use of her physical and mental faculties at the time she was stopped for a traffic violation. *See id.* ("The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony."); *Evans*, 500 S.W.3d at 537. In addition, we

---

[3] We limited our review of the video from 2 minutes 45 seconds to 5 minutes and 33 seconds as did the trial court.

have not found a case upholding an officer's reasonable suspicion based solely on an officer smelling a "faint" odor of alcohol without knowing its origin. *See Evans*, 500 S.W.3d at 537; *Domingo v. State*, 82 S.W.3d 617, 622 (Tex. App.—Amarillo 2002, no pet.) ("[S]o long as consumption of alcohol is not illegal in and of itself, a standard permitting or requiring detention and investigation of persons for alcohol-based offenses solely on whether the odor of alcohol is present invites unwarranted police intrusions into the affairs and freedom of persons.").

Considering the totality of the circumstances and viewing the evidence in the light most favorable to the trial court's ruling, we cannot conclude the trial court erred when it found Officer Tustison did not have reasonable suspicion to extend the scope of the stop to investigate Rodriguez for DWI. *See Valtierra,* 310 S.W.3d at 447; *Evans*, 500 S.W.3d at 538. Thus, we cannot conclude that the trial court erred by granting Rodriguez's motion to suppress. *See Mount,* 217 S.W.3d at 724 (holding that if supported by the record, a trial court's ruling on a motion to suppress will not be overturned). We overrule the State's first issue, and we need not address the State's second issue as it is not dispositive. *See* TEX. R. APP. P. 47.1

### III. CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
13th day of May, 2021.

10