

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0441-21

### SAUL RANULFO HERRERA RIOS, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### DALLAS COUNTY

**KELLER, P.J., filed a dissenting opinion.**

### DISSENTING OPINION

It is undisputed that the parties did not execute a written waiver of Appellant's right to a jury trial as required by Article 1.13.[1] The court of appeals concluded that this error was harmless because the record otherwise showed that Appellant was aware of, and waived, his right to a jury trial.[2] Disputing that conclusion, Appellant claims that the record does not show that he waived a

---

[1] *See* TEX. CODE CRIM. PROC. art. 1.13(a).

[2] *Rios v. State*, 626 S.W.3d 408, 414-15 (Tex. App.—Dallas 2021).

jury trial and in fact shows that he was deprived of his constitutional right to a jury trial. I agree with the court of appeals that the record shows he waived his right to a jury trial.

The court of appeals pointed to the facts that (1) the judgment recites that he waived a jury, (2) pass slips signed by Appellant indicated that his trial would be before the court, (3) a trial was conducted without a defense objection to the absence of a jury, (4) Appellant testified during both phases of trial without objecting to the absence of a jury, and (5) Appellant's motion for new trial failed to complain about the lack of a jury trial.[3] The court of appeals also discussed the testimony from the abatement hearing and concluded that it supported the conclusion that Appellant voluntarily, intelligently, and knowingly waived his right to a jury trial.[4] I agree that points (1), (2), and (4) support the conclusion that Appellant voluntarily, intelligently, and knowingly waived his right to a jury trial. And I agree that the abatement hearing record further supports the conclusion.

## A. The Trial Record

The trial court's judgment states that Appellant "waived the right of trial by jury." In *Johnson v. State*, we held that such a recitation was enough, by itself, to show that the defendant knew he had a right to a jury trial and intentionally relinquished that right.[5] We also held that such a judgment recitation was enough, *by itself*, to render the failure to comply with Article 1.13 harmless.[6]

The trial record further supports the conclusion that Appellant knowingly relinquished his

---

[3] *Id.* at 414.

[4] *Id.* at 415.

[5] 72 S.W.3d 346, 349 (Tex. Crim. App. 2002).

[6] *Id.* at 348-49.

right to a jury trial. The record includes three pass slips that purport to be signed by Appellant that have a check mark next to the option "Trial Before the Court." The "Jury Trial" option is left blank.[7]

In addition, what occurred during the bench trial indicated that a bench trial was in fact taking place, and Appellant at no point suggested that he wanted a jury trial or thought he was supposed to have one. The prosecutor read the indictment, the trial court asked Appellant how he wished to plead, and Appellant pled "not guilty." These are things that even a layman unfamiliar with courtroom procedures would be likely to recognize ordinarily happen at the beginning of a trial. But Appellant was not unfamiliar with courtroom procedures. The record shows that he had previously received deferred adjudication for a different offense, which means that he had pled guilty or nolo contendere at a trial before the court where the court heard evidence to support Appellant's guilt.[8]

There was another exchange that should have indicated to Appellant that he was actually in trial. The defense called Appellant as a witness. Appellant was admonished of and agreed to waive his right not to testify:

> THE COURT: Mr. Rios, you understand that you have what's called the Fifth Amendment right under our Constitution not to testify? You do not have to testify because the burden is not on you. It's on the State to prove their case. So I want to ask you, are you going to waive that Fifth Amendment right and proceed to testify?
>
> [APPELLANT]: Yes.

Aside from the fact that the right not to testify would ordinarily come up at trial, the trial court also informed Appellant that the State had to prove its case and that Appellant had no burden. The State would not be proving its case at a preliminary hearing; it would only be called to prove its case at

---

[7] The reset dates on these pass slips were 10/25/18, 1/24/19, and 2/28/19.

[8] *See* TEX. CODE CRIM. PROC. art. 42A.101.

a trial. But Appellant did not then suggest that he should be testifying in front of a jury.

But in addition to these exchanges that would suggest that Appellant should have known he was in trial, there is more direct evidence that he did in fact know it:

Q. You're the Defendant in this case?

A. Yes.

Q. Do you know what we're doing here today?

A. Yes.

Q. Okay. Did you hear the testimony of everybody that testified in this case.

A. Yes.

Q. Okay. Your daughter [N.] has alleged that you sexually molested her.

A. That's not true.

Appellant did not at that time suggest that a jury trial should have been occurring.

The next day, immediately before the punishment hearing, the trial court found Appellant guilty and made comments that unmistakably conveyed that a bench trial was taking place:

Let the record reflect that yesterday afternoon we recessed the *trial*, after the State had rested and closed and the Defense had rested and closed, I spent the evening reviewing the testimony of the witnesses and the defendant, and it is my decision that *I find the defendant guilty of the offense*, as alleged in the indictment. With that being said we will *proceed with punishment*.[9]

During his testimony at punishment, Appellant expressed his understanding that the trial court had found him guilty:

Q. And *you understand that the Judge found you guilty of this offense*?

A. Yes.

---

[9] Emphasis added.

* * *

Q. What do you want to tell The Court in reference to the conviction that we are here for today?

A. I'm going to go to prison, without having done anything because my daughter was seven years old when they are saying I did that. Supposedly, I abused her or touched her inappropriately.

* * *

Q. Do you accept what the Judge has ruled in reference to finding you guilty.

A. I don't agree because I'm innocent, but their evidence are very precise.[10]

If Appellant did not know that a trial was taking place, this would have been a good opportunity for him to say that he thought a trial was going to happen later and that he thought he would be tried by a jury. Moreover, Appellant also testified that he "respected" the trial court's ruling, though he "disagreed" with it:

Q. Is it your testimony right now that you disagree with this Court's ruling, but you respect the Court's ruling, right?

A. I respect the Court's ruling, yes.

Q. But you disagree with it?

A. Yes.

If Appellant had intended to have a jury trial, then he could have said instead that he did not respect the trial court's ruling because he had wanted his guilt decided by a jury.

And finally, at the end of the trial, the trial court pronounced judgment as follows:

Having found the defendant guilty after listening to the testimony, both on guilt/innocence and now the punishment, the Court is going to sentence the defendant to 35 years in the Texas State Penitentiary. I comm[e]nd you over to the Sheriff of Dallas County to be transported to the appropriate authorities in Huntsville, Texas at the appropriate time. Sheriff, you can take him into custody.

---

[10] Emphasis added.

The prosecutor then read two victim impact statements, and the trial court again said that he remanded Appellant to the Sheriff. At that point, there is simply no way that Appellant could fail to understand that he had been tried before the court and sentenced to prison. But he said nothing.

The Court questions whether the abatement hearing was proper. But regardless of whether we take into account the testimony from the abatement hearing, the record supports the conclusion that no constitutional violation occurred and that the statutory violation that did occur is harmless. As shown above, even without the testimony from the abatement hearing, the record provides more than enough support for a conclusion that Appellant knowingly relinquished his right to a jury trial. And if we do consider the abatement hearing, the record supports the trial court's conclusion even more strongly.

### B. Abatement Hearing

Appellant's attorney testified that he advised Appellant of his right to a jury trial:

Q. Did you advice [sic] Rios of his right to a jury trial?

[Intervening objection and ruling]

A. Yes.

The attorney also testified that they decided to have a bench trial: "We had our option. We decided to go with a none [sic] jury trial." When asked whether he informed Appellant that they were having a trial on the first day of trial, defense counsel responded, "Yes. He knows what a trial is, yes." Counsel also stated that he would have executed a written jury waiver if he had had time but that the trial court had rushed the proceedings.

Appellant admitted to personally signing two of the pass slips that indicate that the case was being set for a bench trial, but he claimed that the pass slips were blank when he signed them.

Appellant testified that he wanted a trial "in front of a jury," that he told his attorney he wanted a jury trial, and that he asked his attorney to object during trial that he wished to have a jury trial. When asked what he thought was going on when he was in front of the judge, Appellant responded, "I thought it was just a hearing with the Judge." Appellant further testified that the judge "didn't tell me" that the hearing was a trial.

Appellant's testimony that he wanted a jury trial is an admission that he knew he had a right to one. His attorney testified that he informed Appellant of this right. The disputed issues were (1) whether Appellant wanted a jury trial, and (2) whether Appellant realized that a bench trial was taking place.

### C. The Trial Court's Findings

Among other things, the trial court found as follows:

25. The Court finds Appellant's testimony that he was not aware he was being tried for the offense on February 28, and March 1, 2019 to not be credible.

26. The Court finds Appellant's testimony that he did not voluntarily consent to a trial before the court to not be credible.

In its conclusions of law, the trial court also determined:

2. Appellant waived his right to a trial by jury.

3. Appellant voluntarily consented to a trial before the court without a jury.

With these findings and conclusions, the trial court resolved the disputed issues against Appellant. The trial court found that Appellant consented to a bench trial and that he knew that a bench trial was occurring. We should defer to those findings because they are supported by the record.[11]

---

[11] *See State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013); *Alford v. State*, 358 S.W.3d 647, 660 (Tex. Crim. App. 2012) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

Appellant signed pass slips that indicated that the case was set for a bench trial. He claims the pass slips were blank when he signed them, but the trial court did not have to believe that testimony, and the trial court found Appellant's testimony about not consenting to a bench trial to be not credible. Moreover, Appellant's own attorney said that "they" had decided to have a bench trial.

Even on the cold record, Appellant's claim that he did not understand that a bench trial was occurring lacks credibility. At the guilt stage of trial, he pled to the indictment, waived his right not to testify after being informed of State's need to prove its case, and testified that knew "what we're doing here today." At the punishment stage, he testified to understanding that he had been convicted, and he testified that he respected the trial court's finding of guilt.

At no point during any of Appellant's involvement in these proceedings did he suggest that he wanted a jury trial. When asked whether he was waiving his right not to testify, he said he was. He did not ask why there was no jury. When asked if he knew "what we're doing here today," he said he did. When asked whether he understood the trial court had found him guilty, he said that he did. When asked whether he respected the trial judge's ruling in finding him guilty, he said he disagreed with it but he accepted it. All of Appellant's responses to these questions show that Appellant knew he was having a bench trial, as he had intended all along.

So even if we can consider the testimony at the abatement hearing, it does not change anything because the trial court made credibility findings against Appellant and the record supports the trial court's finding that Appellant consented to having a bench trial.

I respectfully dissent.

Filed: December 7, 2022

Publish